IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEFFREY W. GAZAWAY,

        Plaintiff,

v.                                                    Case No. 20-2515-JWB

IDEAL CLAMP PRODUCTS, INC.,
*doing business as Ideal-Triton,*

        Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant's motion to dismiss Count II of the complaint. (Doc. 6.) The motion has been fully briefed by the parties and is ripe for decision. (Docs. 7, 10, 12.) For the reasons stated herein, the motion to dismiss Count II is GRANTED.

**I. Facts**

The following factual allegations are taken from the complaint and are assumed to be true for purposes of deciding the motion to dismiss.

Plaintiff is a resident and citizen of the State of Kansas and is over 40 years of age. (Doc. 1 at 1.) Defendant is a corporation organized under the laws of Tennessee and does business in interstate commerce, including within Kansas. (*Id.* at 2.) It designs, manufactures, and sells specialty clamping products such as t-bolts, bands, struts and other items. (*Id.*)

In April 2020, an in-house recruiter for Defendant contacted Plaintiff by phone regarding a potential job as Defendant's OEM Key Account Manager, an open position that the recruiter said paid $100,000 per year. (*Id.* at 3.) Plaintiff said the job was a good fit but he needed to earn more.

The recruiter concluded the call by asking Plaintiff to speak next with Defendant's Director of OEM Sales, James Mann. (*Id.*)

Plaintiff and Mann spoke by phone a short time later. Within the first few minutes, Mann asked Plaintiff how old he was. Plaintiff said he was fifty-five. Mann said mid-fifties, and not already sixty, was "good" so that Plaintiff could work longer with the company and its customers if he were hired. (*Id.* at 4.)

Shortly thereafter Plaintiff received a second call from the in-house recruiter, who asked Plaintiff if he would accept the position if the salary was increased to $110,000 plus an $800 per month car allowance. Plaintiff said yes. The recruiter then arranged a video conference call for April 30, 2020, between Plaintiff, Director Mann, and John Mills, who was Defendant's Global Vice President of OEM Sales and Marketing.

A week later, Mann emailed Plaintiff and said it was "looking positive" and they just "need approvals" to hire Plaintiff. (Doc. 1 at 4.) Plaintiff responded positively. Mann thereafter emailed Plaintiff and scheduled a video conference call for May 14, 2020, between Plaintiff, Defendant's new company president Richard Stepien, Mann, and Mills. Plaintiff alleges that Stepien cut Mann and Mills off when they tried to say anything positive and instead posed "clearly negative" questions. (*Id.*) A short time after the call, Mann phoned Plaintiff to say he would not be hired, as Stepien had indicated Plaintiff was "simply too old" and instructed Mann to find someone younger for the position. (*Id.* at 4-5.) Plaintiff thereafter sent emails to Mann asking him to confirm these statements, but Mann emailed back that he "mis-spoke" and that age was not an issue. (*Id.* at 5.)

The foregoing negotiations occurred while Plaintiff was physically present in Kansas, his place of residence. The position for which Plaintiff was negotiating was intended to be based in Crawford County, Kansas. (*Id.* at 2-3.)

Count I of the complaint alleges that Defendant refused to hire Plaintiff on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). (Doc. 1 at 7.) Count II alleges that Defendant's refusal to hire Plaintiff was based on age and violated the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §§ 4-21-401(a)(1) & (a)(2). (Doc. 1 at 8.) The complaint alleges that Plaintiff suffered pecuniary and nonpecuniary loss as a result of Defendant's actions. (*Id.*)

Defendant moves under Fed. R. Civ. P. 12(b)(6) to dismiss Count II of the complaint for failure to state a claim. It argues that under Kansas choice-of-law rules, Kansas law rather than Tennessee law governs the claim. Moreover, it contends the THRA, by its own terms, prohibits extraterritorial application and provides no basis for relief. (Doc. 7.)

**II. Standards**

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). As the Tenth Circuit observed:

> Determining whether a complaint contains enough well-pleaded facts sufficient to state a claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. The court must determine whether the plaintiff has pleaded enough facts to state a claim for relief that is plausible on its face, not just conceivable. Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts. If, in the end, a plaintiff's well-pleaded facts do not permit the court

3

to infer more than the mere possibility of misconduct, the complaint fails to state a claim.

*Carbajal v. McCann*, 808 F. App'x 620, No. 18-1132, 2020 WL 1510047, at *3 (10th Cir. Mar. 30, 2020).

### III. Analysis

The THRA makes it a discriminatory practice for an employer to refuse to hire a person because of such individual's age. Tenn. Code Ann. § 4-21-401(a)(1). The term "employer" includes a corporation employing eight or more persons within the State of Tennessee. *Id.*, § 4-21-102(5), (14). A person injured by an act in violation of the THRA is authorized to bring a civil cause of action. *Id.*, § 4-21-311(a). The THRA does not expressly state whether it applies in circumstances like this – where the employer is located in Tennessee but the job applicant was a Kansas resident, who remained in Kansas, and who sought employment for a job to be located in Kansas. Defendant contends the THRA does not allow such extraterritorial application, while Plaintiff disputes that and emphasizes that Defendant's allegedly discriminatory decision was made in Tennessee. The court finds no binding Tennessee authority on that question. *Cf. Ramsey v. Greenbush Logistics, Inc.*, No. 3:17-CV-01167-AKK, 2017 WL 6492608, at *7 (N.D. Ala. Dec. 19, 2017) ("The Sixth Circuit's analysis of the statute, albeit in an unpublished case, has determined that the THRA has no such extraterritorial application holding that it 'explicitly limits its authority to individuals within the state [of Tennessee].'") (quoting *Marshall v. Federal Exp. Corp.*, 12 F. App'x. 186, 188 (6th Cir. 2000)); Tenn. Code Ann. § 4-21-101(3) (noting the purpose of the THRA to "Safeguard all individuals within the state from discrimination…."). *See also Union Underwear Co. v. Barnhart*, 50 S.W.3d 188, 193 (Ky. 2001) (by a 4-3 vote, Kentucky Supreme Court concludes the Kentucky Civil Rights Act [which contains provisions similar to the THRA] does not have extraterritorial application where the defendant employer was headquartered

4

in Kentucky but the plaintiff was terminated from his job in another state). Ultimately, the court need not resolve that issue because, as discussed below, Kansas's choice-of-law rules mandate application of Kansas law to the claim.

In exercising this court's supplemental jurisdiction over state-law claims, the court must apply the substantive law – including choice-of-law rules – of the forum state. *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999). A thorough discussion of Kansas's choice-of-law rules, as applied to employment discrimination claims, was set forth by Judge Robinson in *Wingerd v. Kaabooworks Svcs.*, No. 18-2024-JAR, 2019 WL 1171700 (D. Kan. Mar. 13, 2019). The first question to be addressed when there is a dispute as to which state's laws should be applied to a claim is whether a true conflict exists. *Id.*, 2019 WL 1171700, at *17. "Where the outcome of a dispute would be the same under the law of either state, the Court need not decide the conflict and may apply Kansas law." *Id.* Here, similar to the plaintiff in *Wingerd,* Plaintiff has not sought to plead a Kansas statutory claim, meaning that if Kansas law governs his claim it would be subject to dismissal. *Id.* Because application of Kansas rather than Tennessee law could alter the outcome, the court concludes that a true conflict exists. *See id.*

Plaintiff has the burden to present sufficient facts to show that Tennessee law applies. *See In re K.M.H.,* 285 Kan. 53, 60, 169 P.3d 1025, 1032 (2007). Moreover, in Kansas "the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." *Brenner v. Oppenheimer & Co., Inc*., 273 Kan. 525, 541, 44 P.3d 364, 376 (Kan. 2002) (quotation marks and citation omitted). The first step in determining whose law is to govern a conflict situation is the characterization of what kind of claim is involved. *Miller v. Dorr*, 262 F. Supp. 2d 1233, 1238 (D. Kan. 2003). As indicated by *Wingerd,* a job discrimination claim of the type asserted in Count II is analogous to a tort claim, because it is based on the alleged

5

violation of a duty imposed by law, rather than a duty arising from contract. *See Wingerd,* 2019 WL 1171700, at * 18-19 (noting "courts across the country have found that employment discrimination claims sound in tort, not contract.")

For tort claims, the rule in Kansas "is that the law of the state where the tort occurred – *lex loci delicti* – should apply." *Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). This means that "where [a] negligent act originated outside the state, but the resultant injury occurred in the state," the law of Kansas applies. *Id.* In other words, the place of the wrong is that place where the last event necessary to impose liability took place. *Wingerd,* 2019 WL 1171700, at *19 (citing *Aiken v. Emp'r Health Servs., Inc.*, 81 F.3d 172, 1996 WL 134933, at *2 (10th Cir. Mar. 23, 1996) (unpublished table decision) (citing *Ling*, 237 Kan. at 634, 703 P.2d at 735)). Application of that principle to the allegations in Count II show Kansas is the place of the injury, as the last event necessary to impose liability would be conveyance of Defendant's employment decision to Plaintiff in Kansas and Plaintiff would suffer economic or other losses from the decision in Kansas. *Cf. Macki v. Ford Motor Co.*, 803 F.2d 720 (Table), 1986 WL 17722, *1 (6th Cir. 1986) (discrimination claim of worker in Ohio against Michigan employer was governed by Ohio rather than Michigan law).

The court accordingly finds that under Kansas choice-of-law rules, the allegations of discriminatory refusal to hire in Count II are subject to the substantive law of Kansas. Because Plaintiff relies exclusively on Tennessee law in Count II and does not claim Defendant's actions entitle him to relief under Kansas law, the court finds Count II fails to state a claim upon which relief can be granted.

**IV.  Conclusion**

Defendant's motion to dismiss Count II (Doc. 11) is GRANTED.  Count II of the complaint is DISMISSED for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED this 12th day of February, 2021.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE